UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ROBERT CLEVELAND MITCHELL,

             Plaintiff,

v.

CONNIE HORTON et al.,

             Defendants.

_____/

Case No. 2:18-cv-216

Honorable Gordon J. Quist

## <u>OPINION</u>

       This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's Eighth Amendment claims against Defendants Horton, Washington, and McKee for failure to state a claim.

**Discussion**

I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Muskegon County, Michigan. The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues Defendants Warden Connie Horton, MDOC Director Heidi Washington, MDOC Deputy Director Kenneth McKee, and the Michigan Department of Corrections (MDOC).

Plaintiff alleges that he is a disabled inmate, who is permanently wheelchair dependent. Plaintiff arrived in the URF Eastside Facility in June of 2016. At that time, Plaintiff had been misconduct free for 14 years. Plaintiff states that if URF Eastside inmates remain misconduct free and do not cause problems, they are rewarded by being sent to URF Westside, which is less restrictive and affords inmates more programs and other benefits. Plaintiff states that some wheelchair dependent inmates from the Eastside have been rewarded and allowed to go to the Westside facility, but that inmates who are permanently wheelchair bound are excluded from going to the Westside because of their disability.

Plaintiff alleges that permanent wheelchair dependent inmates at URF are housed in a level IV unit in the basement of the prison and that Defendants have failed to ensure that there is a reliable handicap elevator for ingress and egress from the unit. Plaintiff claims that when the antiquated elevator was broken, as it frequently was, he and other disabled inmates were required to remain locked in their rooms in the basement of the prison, which prevented them from attending medical appointments. Plaintiff attaches a copy of a chart showing the dates that the URF handicap elevator was broken and repaired between January 2, 2018, and September 25, 2018 (ECF No. 1-

1, PageID.22-23).  According to the chart, the elevator was broken on 112 days during this time period.  Plaintiff claims that the named Defendants have, through their acts or omissions, engaged in a pattern of discrimination against wheelchair dependent inmates.

Plaintiff claims that Defendants violated his rights under the Eighth and Fourteenth Amendments, the Rehabilitation Act, the Americans with Disabilities Act, and state law.  Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## II.       Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the

*Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that Defendants Horton, Washington, and McKee violated his rights under the Eighth Amendment when they failed to properly address the fact that the wheelchair accessible elevator was frequently broken, which denied Plaintiff and other disabled inmates access to outdoor exercise and fresh air, family visitation privileges, health care treatment, dayroom movie or television viewing, out-going U.S. mail service, law and general library usage, religious services, and other activities.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with

"deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Plaintiff's Eighth Amendment claims are conclusory in that Plaintiff fails to allege specific facts showing that Defendants were deliberately indifferent to a serious risk to Plaintiff's health or safety. According to the URF Marquette Housing Unit Handicap Elevator Breakdown/Fixed Chart for January 2, 2018, to November 27, 2018, which is attached to Plaintiff's complaint, the longest stretch of time that the elevator was broken was a period of 22 days from October 3, 2018, to October 25, 2018. (ECF No. 1-1, PageID.23.) Plaintiff asserts that during this time, he was unable to leave his housing unit in order to go to yard or engage in other recreational activities. It unquestionably is well established that "'total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees.'" *Rodgers v. Jabe*, 43 F.3d 1082, 1086 (6th Cir. 1995) (quoting *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983)); *see also Argue v. Hofmeyer*, 80 F. App'x 427 (6th Cir. 2003). Nevertheless, it is equally well established that allegations about temporary inconveniences do not demonstrate that the conditions fell beneath the minimal civilized measure

of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)).

Here, even accepting as true Plaintiff's allegation that he received no out-of-cell exercise while the elevator was out of service, Plaintiff's allegations describe a mere temporary inconvenience. Moreover, Plaintiff does not allege that his cell was too small to permit any exercise or that he suffered any ill effects from the temporary limitation on his yard privileges. *See, e.g., May v. Baldwin*, 109 F.3d 557, 565-66 (9th Cir. 1997) (denial of out-of-cell exercise for 21 days did not rise to Eighth amendment violation); *Knight v. Armontrout*, 878 F.2d 1093, 1096 (8th Cir. 1989) ("Denial of recreation for a short period, per se, is not a constitutional violation."); *Davenport v. DeRobertis*, 844 F.2d 1310 (8th Cir. 1988) (upholding a 90-day segregation threshold before five hours of weekly out-of-cell exercise is required), *cited with approval in Pearson v. Ramos*, 237 F.3d 881, 884-85 (7th Cir. 2001); *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) (no Eighth Amendment violation when plaintiff was held in segregation without outdoor exercise for 28 days).

Nor does Plaintiff allege that the elevator malfunctions were the result of any deliberate indifference on the part of Defendants. The record shows that the handicap elevator in Plaintiff's unit was repaired after each breakdown, sometimes within as little as 2 days. The fact that the elevator was old and repeatedly broke down does not require a finding that Defendants were deliberately indifferent to the problem. Because the allegations set forth by Plaintiff do not rise to the level of an Eighth Amendment violation, his Eighth Amendment claims are properly dismissed.

Plaintiff claims that Defendants' practice of refusing to allow inmates who are permanently wheelchair dependent to be housed in URF Westside violates the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Persons with a disability are not a suspect class for purposes of an equal protection challenge. *Bullington v. Bedford Cty., Tennessee*, 905 F.3d 467, 477 (6th Cir. 2018) (*citing Heller v. Doe*, 509 U.S. 312, 320 (1993)). Nor are prisoners "considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998). In addition, prisoners do not have a fundamental right to be housed in a particular unit under the Constitution. *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Hewitt v. Helms*, 459 U.S. 460, 468 (1983); *Meachum v. Fano*, 427 U.S. 215, 224 (1976).

Because neither a fundamental right nor a suspect class is at issue, Plaintiff's claim is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated

differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

According to the allegations in Plaintiff's complaint, some wheelchair dependent inmates from the Eastside have been allowed to go to the Westside facility, but Plaintiff and other inmates who are permanently wheelchair bound are excluded from going to the Westside. On the face of the complaint, the Court can discern no apparent rational basis for the difference in treatment between groups of wheelchair reliant inmates. Because Plaintiff alleges facts showing that he was intentionally treated differently from other similarly situated inmates, Plaintiff's equal protection claim may not be dismissed on initial review.

Plaintiff claims that Defendants Horton, Washington, McKee, and MDOC violated his rights under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131. Plaintiff also states that Defendant MDOC violated his rights under Section 504 of the Rehabilitation Act of 1973 (RA), 29 U.S.C. 794(a). Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481-82 (6th Cir. 2010) (citing 42 U.S.C. § 12132). Similarly, § 504 of the RA provides in pertinent part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). "Because the ADA sets forth the same remedies, procedures, and rights as the Rehabilitation Act . . . claims brought under both statutes may be analyzed together." *Thompson*

*v. Williamson County*, 219 F.3d 555, 557, n.3 (6th Cir. 2000) (citing *Maddox v. University of Tenn.*, 62 F.3d 843, 846, n.2 (6th Cir. 1995)).

In order to state a claim under Title II of the ADA, Plaintiff must show: (1) that he is a qualified individual with a disability; (2) that defendants are subject to the ADA; and (3) that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disability. *See Tucker v. Tennessee*, 539 F.3d 526, 532-33 (6th Cir. 2008); *see also Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003). The term "qualified individual with a disability" includes "an individual with a disability who, with or without . . . the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210-12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs). The proper defendant under a Title II claim is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396-97 (6th Cir. 2002). Plaintiff has named the MDOC as a Defendant and three MDOC officials acting in their official capacities: Defendants Horton, Washington, and McKee.

The State of Michigan (acting through the MDOC) is not necessarily immune from Plaintiff's claims under the ADA. The ADA "validly abrogates state sovereign immunity" for "conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 151, 159 (2006); *see also Mingus*, 591 F.3d at 482. If conduct violates the ADA but not the Fourteenth Amendment, then the Court must determine whether the ADA validly abrogates state

sovereign immunity. *Id.* At this stage of the proceedings, the Court will presume that the ADA validly abrogates state sovereign immunity for Plaintiff's ADA claims. Upon review, therefore, the Court concludes that Plaintiff's allegations are sufficient to warrant service of Plaintiff's ADA claims on Defendants MDOC, Horton, Washington, and McKee. For the same reasons, Plaintiff's Rehabilitation Act claim against Defendant MDOC is not properly dismissed on initial review.

Finally, Plaintiff contends that Defendants' conduct violated his rights under state law. Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id.* Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). In this case, Plaintiff continues to have federal claims before this court. Therefore, the balance of the relevant considerations weighs toward the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claim will be not be dismissed at this time.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's Eighth Amendment claims against Defendants Horton, Washington, and McKee will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  Plaintiff's Fourteenth Amendment equal protection claims against Defendants Horton, Washington, and McKee, his ADA and state law claims against Defendants Horton, Washington, McKee, and MDOC, and his Rehabilitation Act claim against Defendant MDOC remain in the case.

An order consistent with this opinion will be entered.


Dated: March 4, 2019                          /s/ Gordon J. Quist
                                            GORDON J. QUIST
                                  UNITED STATES DISTRICT JUDGE