UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT CLEVELAND
MITCHELL #166223, III,

        Plaintiff,

v.

CONNIE HORTON, et al.,

        Defendants.
_____/

Case No. 2:18-cv-00216

Hon. Gordon J. Quist
U.S. District Judge

## REPORT AND RECOMMENDATION

**I. Introduction**

This is a civil rights action brought by state prisoner Robert Cleveland Mitchell, III. Mitchell is a disabled inmate who is wheelchair dependent. Mitchell alleges that, while he was confined at the Chippewa Correctional Facility (URF), he was discriminated against by being confined in the more restrictive Eastside of the facility, while other non-disabled inmates were transferred to the more desirable Westside, which offers more benefits, services, and programs. (ECF No. 1, PageID.2-6.)

Mitchell says that wheelchair dependent inmates at URF are housed in a level IV unit in the basement of the prison, regardless of their security level, and that the handicap elevator used for ingress and egress has not been reliable. (*Id*.) Mitchell says that the elevator was broken down for 112 days between January 2, 2018, and September 5, 2018. Mitchell sues four Defendants: the Michigan Department of

Corrections (MDOC), URF Warden Connie Horton, MDOC Director Heidi Washington, and MDOC Deputy Director Kenneth McKee.

Mitchell's complaint asserted claims under the Eighth and Fourteenth Amendments (Counts I-III) (*id.*, PageID.7-10), the Americans with Disabilities Act (ADA) (Count IV) (*id.*, PageID.10-12), and the Rehabilitation Act (RA) (Count V) (*id.*, PageID.12). Mitchell also asserts state laws claims for negligence and wanton and willful misconduct (Counts VI-VII) (*id.*, PageID.12-14).

On March 4, 2019, the Court dismissed Mitchell's Eighth Amendment claims, but allowed Mitchell to proceed with (a) his Fourteenth Amendment Equal Protection Clause claims against Defendants Horton, Washington, and McKee, (b) his ADA and state law claims against Defendants Horton, Washington, McKee, and the MDOC, and (c) his RA claims against Defendant MDOC. (ECF No. 11-12.)

At mediation, the parties agreed to partially settle the case and dismiss counts I, II, and III. (ECF No. 19.) Thus, Mitchell's Eighth Amendment and Fourteenth Amendment claims have been dismissed. The remaining claims allege violations of the ADA, the RA, and state law.

Defendants have filed a partial motion for summary judgment based upon the failure to exhaust administrative remedies and a motion to dismiss based upon Eleventh Amendment immunity. (ECF No. 26.) Mitchell filed a response. (ECF No. 32.) Defendants replied (ECF No. 32), and Mitchell filed a sur-reply (ECF No. 37). Finally, Defendants filed a reply to the sur-reply. (ECF No. 38.)

The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court grant the motion for summary judgment filed by Defendants MDOC, Washington, and McKee because Mitchell has failed to exhaust his administrative remedies as to his claims against these Defendants. In addition, the undersigned respectfully recommends that the Court deny Defendant Horton's motion to dismiss because she may still be sued in her official capacity under the ADA.

If the Court adopts this recommendation, Mitchell's ADA and state law claims (Counts IV, VI and VII) against Defendant Horton will remain.

## II. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing

---

[1]   Disputed issues of fact regarding exhaustion under the PLRA may be decided by the court in an evidentiary hearing or bench trial and need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 or any other federal law must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific

4

type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims

5

internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ T, BB. The respondent

6

at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ DD.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG.

"The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy

7

Directive 01.01.140.  The prisoner will be promptly notified that an extension of time is needed to investigate the grievance.  *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required.  It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit.  *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).  The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally

> defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]


### IV. Plaintiff's Allegations

Plaintiff's remaining allegations – Counts IV to VII – are summarized in the table below.

| Claim | Defendant | Date or Date Range of Incident(s) |
|---|---|---|
| ADA claim: Defendants limited wheelchair inmates to Eastside "disciplinary" facility and denied access and program participation. Defendants denied transfer to less restrictive Westside. (Count IV) | MDOC, Horton, Washington, and McKee | January 2018 to present |
| RA claim: Defendants limited wheelchair inmates to Eastside "disciplinary" facility and denied access and program participation. Defendants denied | MDOC | January 2018 to present |

---

[2] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id*. at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

9

| Claim | Defendant | Date or Date Range of Incident(s) |
|---|---|---|
| transfer to less restrictive Westside. (Count V) | | |
| <u>Negligence</u>: denial of affirmative duty of care. (Count VI) | MDOC, Horton, Washington, and McKee | January 2018 to present |
| <u>Wanton and willful misconduct</u>: discriminatory misconduct by Defendants deprived Plaintiff of life's necessities. (Count VII) | MDOC, Horton, Washington, and McKee | January 2018 to present |

**V. One Grievance Identified as Exhausted by Mitchell**

In their motion for summary judgment, Defendants MDOC, Washington, and McKee argue that Mitchell failed to properly exhaust his remaining claims by naming each Defendant in a grievance. Mitchell says that he exhausted his remaining claims in Grievance **URF-17-05-1495-06e.** (ECF No. 33, PageID.209.)[3] Defendant Horton concedes that this grievance was exhausted against her, but the other Defendants – the MDOC, Washington, and McKee – argue that Mitchell failed to properly exhaust this grievance against them by naming them in the grievance. (ECF No. 27, PageID.122.) Mitchell says that he submitted factual allegations in his grievance to place each Defendant on notice that his remaining claims were against them. In addition, Mitchell argues that his failure to name the MDOC, Washington, and

---

[3] Mitchell filed several other grievances that either were rejected or are not relevant to his remaining claims. (ECF No. 27-3, PageID.142-195.) Mitchell relies on Grievance **URF-17-05-1405-06e** as the grievance that exhausts his remaining claims against Defendants. (ECF No. 33, PageID.209.)

McKee in his grievance was due to his inability to identify them at the time he filed his grievance.

Grievance **URF-17-05-1495-06e** is summarized below.

| Grievance No. | Persons Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| URF-17-05-1495-06e (ECF No. 27-3, PageID.172-176.) | **Horton**, Miller, LaCrosse, and Thompson | Purposely banned Plaintiff from being housed on less restrictive Westside due to disability | 5/12/2017 (this predates the alleged 2018 violations in the complaint.) | Denied: Westside of URF will not accommodate the physical space needed for permanent wheelchair prisoners. | Denied | Denied |

### VII. Analysis

Defendant Horton concedes that Mitchell exhausted his grievances against her. Mitchell concedes that he failed to name the other Defendants – the MDOC, Washington, and McKee – in his grievance. Mitchell makes two arguments as to why his failure to name each Defendant in his exhausted grievance should be excused. First, Mitchell says that he provided enough facts to place each Defendant on notice that he was pursuing claims against them. Second, Mitchell argues that he failed to name each Defendant at the time he filed his Step I grievance because he could not identify them.

At Step I of the grievance process Mitchell wrote:

> MICHIGAN DEPARTMENT OF CORRECTIONS
> PRISONER/PAROLEE GRIEVANCE FORM
>
> 4835-4247 10/94
> CSJ-247A
>
> Date Received at Step 1: MAY 1 6 2017    Grievance Identifier: URF 17 05 14A 51 06E
>
> Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.
>
> | Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
> |---|---|---|---|---|---|
> | Robert C. Mitchell, III | 166223 | URF | M-319 | 5/12/17 | 5/15/17 |
>
> What attempt did you make to resolve this issue prior to writing this grievance? On what date? 5/12/17
> If none, explain why. All efforts to informally resolve the discriminatory subject matter of this Step I administrative grievance has been unsuccessful despite various talks with PC Saloman and housing unit officers. Accordingly, this grievance is timely submitted and warranted.
>
> State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.
>
> A/Warden C. Horton, A/Deputy Warden J. Miller, RUM LaCrosse along with RUM Thompson are the named Respondents herein.
>
> Grievant Mitchell is a permanent wheelchair dependent disabled prisoner banned from being housed in the less restrictive westside facility based on nothing more than my permanent disability. This is unlawful discrimination.
>
> The Respondents have deliberately and knowingly adopted a pervasive and prevailing discriminatory housing ban against permanent wheelchair dependent prisoners. What is worse, not only are non-disabled prisoners granted the benefit and opportunity of the less restrictive westside housing, but disabled prisoners with limited wheelchair mobility are afforded the same privilege. Therefore, only permanent wheelchair bound prisoners are being purposely targeted and discriminated against due to our disability.
>
> This blatant continuing measure of ~~their~~ policy and practice of disability discrimination must be included in the DOJ's investigation of the lack of accessible wheelchair restroom accommodations in the URF school building.

(ECF No. 27-3, PageID.175.)

In the opinion of the undersigned, Mitchell's arguments lack merit. Mitchell named only one Defendant – Defendant Horton – and four non-Defendants in this grievance. Mitchell now asserts that, during May of 2017, he could not have identified all the Defendants involved in the conduct that allegedly took place in January of 2018, through the date that he filed his complaint. (ECF No. 33, PageID.209.)

Specifically, Mitchell failed to name the MDOC, Washington, or McKee in a properly exhausted grievance at any time between May of 2017, or at any time after

12

he alleges his rights were violated in 2018. Certainly, Mitchell was aware of the MDOC, the Director and Deputy Director of the MDOC, if not by name, by title. This is not a situation where Mitchell was unable to identify the names or titles of these Defendants. Mitchell concedes that he "should have" grieved these Defendants. (Affidavit, ECF No. 34, PageID.216.)[4] Despite knowing that, he never properly submitted a grievance against Defendants MDOC, Washington, or McKee.[5]

In the opinion of the undersigned, Defendants MDOC, Washington, and McKee should be dismissed due to Mitchell's failure to exhaust his administrative remedies against them. The MDOC requires a prisoner to identify the individuals being grieved, *Reed-Bey*, 603 F.3d at 324-25, and the subject matter of the grievance. *Mattox*, 851 F.3d at 596. An inmate must name each defendant in a properly exhausted grievance before he files a federal complaint. *Kean v. Hughes*, No. 1:12-cv-847, 2013 WL 5771146 at *2 (W.D. Mich. Oct. 24, 2013) ("The MDOC had no reason to address a claim against any other employee"). Where a prisoner fails to name a Defendant in his Step I grievance, or mentions an individual who is involved for the

---

[4] In fact, Mitchell even states that he knew about the MDOC, Director Washington and Deputy Director McKee's involvement after he was interviewed on this grievance at Step I. (ECF No. 33, PageID.209; ECF No. 34, PageID.216.) Nevertheless, he never filed a grievance against these individuals either before the alleged conduct in 2018, like he did against Defendant Horton, or after the alleged conduct in 2018. Mitchell also failed to include these potential Defendants in his Step II appeal. (ECF No. 27-2, PageID.173.)

[5] Mitchell is not arguing that his rejected grievances exhausted any of his claims against Defendants MDOC, Washington, or McKee.

13

first time during the Step III appeal of the denial of a grievance, the claim against that individual is not properly exhausted. *Id.* at *6.

### VIII. Eleventh Amendment Immunity

Finally, Defendant Horton argues that she is entitled to Eleventh Amendment immunity because she took all actions in her official capacity as an employee of the state. (ECF No. 7, PageID.125.) Mitchell's remaining federal claim against Defendant Horton is under the ADA. As the Court has already explained in the March 4, 2019, opinion:

> The proper defendant under a Title II claim is the public entity or an official acting in his **official capacity**. *Carten v. Kent State Univ.*, 282 F.3d 391, 396-97 (6th Cir. 2002). Plaintiff has named the MDOC as a Defendant and three MDOC officials acting in their official capacities: Defendants **Horton**, Washington, and McKee.

(ECF No. 11, PageID.76.) (emphasis added.) Accordingly, Defendant Horton is not entitled to dismissal of the ADA claim due to being properly named in her official capacity.[6]

### IX. Recommendation

The undersigned respectfully recommends that this Court dismiss all claims against the MDOC, Washington, and McKee, without prejudice, because Mitchell has failed to exhaust these claims.

---

[6] This Court also noted that the ADA validly abrogates state sovereign immunity for conduct that actually violates the Fourteenth Amendment. (ECF No. 11, PageID.76 (citing *United States v. Georgia*, 546 U.S. 151, 159 (2006).) The Court declined to consider, at that point, whether the Fourteenth Amendment had been violated. Absent a showing that the Fourteenth Amendment was not violated, the undersigned must continue to assume that the ADA validly abrogates the State's sovereign immunity.

14

If the Court adopts this recommendation, Mitchell's ADA and state law claims (Counts IV, VI and VII) against Defendant Horton will remain.

Dated:   July 6, 2020                                          /s/ *Maarten Vermaat*
                                                               MAARTEN VERMAAT
                                                               U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).